UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA O' FARRELL,<br>Personal Representative of the Estate<br>of Samuel Joseph Dash, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 12-CV-0633-CVE-TLW<br>)<br>)<br>)<br>)<br>)  |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion for Summary Judgment (Dkt. # 19) and Defendant's Motion for Summary Judgment (Dkt. # 20). The parties dispute whether Oklahoma or Texas insurance law applies to plaintiff's claim for underinsured motorist (UIM) benefits, and they agree that the choice of law issue is dispositive. Plaintiff Patricia O'Farrell, in her capacity as the personal representative of the Estate of Samuel Joseph Dash (the Estate), argues that Oklahoma law applies and an insured's own vehicle qualifies as an "uninsured motor vehicle" as a matter of law. Defendant contends that Texas law applies and an exclusion in the policy providing that the insured's vehicle is not an uninsured motor vehicle is enforceable under Texas law.

I.

On June 24, 1994, State Farm Mutual Automobile Insurance Company (State Farm) issued an automobile insurance policy to Curtis and Elisabeth Callaway. The application was completed at the office of State Farm agent Roland Gladden in Odessa, Texas, and the Callaways resided in Odessa when the policy was issued. Dkt. # 20-1, at 2. The Callaways moved to Midland, Texas in

2004. Id. From the date of the issuance of the policy, all premium notice renewals and any other correspondence was sent to the Callaways at an address in Texas. Id. The policy plainly states that "[t]he Auto(s) or Trailer(s) described in this policy is principally garaged at the address shown unless otherwise stated." Dkt. # 20-9, at 3. The Callaways added a 1998 Ford Expedition to the policy with an effective date of coverage of May 2, 2003. Dkt. # 20-1, at 2. Curtis Callaway died on April 21, 2004, but Elisabeth Callaway maintained coverage of the Expedition after his death. Elisabeth Callaway died on February 27, 2012, and the policy remained in effect until April 25, 2012. Dkt. Id. at 1. The address shown on the declarations page for the policy period between February 17, 2012 until the policy terminated on April 25, 2012 was 2804 Purple Sage Trail, Midland, Texas, and this is where the Expedition was principally garaged during that time period. Dkt. # 20-9, at 3.

In September 2010, Elisabeth Callaway loaned the Expedition to her grandson, Justin Gibson, for his use while he was home on leave from military duty. Dkt. # 19-2, at 8. While he was overseas on military duty, Gibson stored the Expedition at the home of his other grandmother, Mary Campbell, in Stigler, Oklahoma. Id. Gibson had been staying at Campbell's home since 2000 and he treated it as his residence while he was on leave. Id. at 9. Neither Elisabeth Callaway nor Gibson notified State Farm that Gibson had taken the Expedition to Oklahoma or that he would be storing the vehicle in Oklahoma. Dkt. # 20-8, at 12. Gibson was not added as a driver on the policy and he did not obtain his own insurance for the Expedition. Id. at 11-12. In February 2012, Elisabeth Callaway completed an Application for Texas Certificate of Title Seller, Donor, or Trader's Affidavit, but there is no evidence showing that the application was filed. Dkt. # 19-5. Gibson states that he was "short on money, and [he] was waiting for his next paycheck to get everything

2

switched over." Dkt. # 19-2, at 7. Even though the application for a Texas title was not filed, plaintiff claims that ownership of the Expedition had transferred to Gibson in February 2012. Dkt. # 19, at 6; Dkt. # 24, at 4-5.

On March 25, 2012, Gibson allowed Brian Cripps to drive the Expedition, and Samuel Dash was a passenger in the Expedition. The Expedition was involved in a single-vehicle rollover accident and Dash was killed. Dkt. # 20-3 (police report). At the time of the accident, the Expedition was registered in Texas and it was titled in Texas to Curtis and Elisabeth Callaway. Dkt. # 20-5. State Farm received notice of the accident and learned for the first time that Gibson had maintained possession of the Expedition in Oklahoma since September 2010. State Farm paid the maximum limit of liability coverage of $100,000 to the Estate. Dkt. # 20-7. The Estate subsequently submitted a claim for UIM benefits under Callaway's policy. The policy had a $100,000 limit for underinsured motorist claims. Dkt. # 20-9, at 3. State Farm agreed to "pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person**, or **property damage**, caused by an accident." Id. at 16. The term "**covered person**" means "[y]ou or any **family member** [or] [a]ny person occupying your covered auto." Id. The policy states that "uninsured motor vehicle does not include any vehicle or equipment . . . [o]wned by or furnished or available for the regular use of you or any family member . . . ." Id. at 17. The insured was also required to notify State Farm of any changes that could affect the insurance premium, including additional operators using the insured vehicle or a change in the "place of the principal garaging" of the insured vehicle. Id. at 23. The policy states that it "contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us." Id.

3

On July 5, 2012, State Farm sent a letter to the Estate's attorney notifying the Estate that its claim for UIM benefits was being denied, because the policy expressly excluded the insured vehicle from the definition of "uninsured motor vehicle." Dkt. # 19-6. The letter cited cases decided by the Texas Court of Appeals finding that it was not against the public policy of the state of Texas for an insurer to exclude the insured's vehicle from UIM coverage. Id. at 1. The Estate filed suit in the District Court of Tulsa County, Oklahoma seeking a declaratory judgment that "Oklahoma law governs this loss, as opposed to laws from the State of Texas, that the Estate is entitled to uninsured/underinsured motorist benefits" under the policy. Dkt. # 2-1, at 4. On November 13, 2012, State Farm removed the case to this Court. Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The sole issue presented by the parties is whether Texas or Oklahoma insurance law governs the Estate's claim for UIM benefits. Plaintiff argues that Oklahoma law applies and that it is against the public policy of Oklahoma to exclude the insured vehicle from the definition of "uninsured motor vehicle" in an automobile insurance policy. Defendant asserts that OKLA. STAT. tit. 36, § 3636 has an express choice of law provision and Oklahoma law does not apply unless an insurance policy is "issued, delivered, renewed, or extended with respect to a motor vehicle registered or principally garaged" in Oklahoma.

Under the circumstances giving rise to the Estate's claim for UIM benefits, the outcome will be different under the substantive insurance law of Oklahoma or Texas. Oklahoma law requires that an automobile insurer offer its insured uninsured and UIM coverage of at least $25,000 per person and $50,000 per occurrence, but the insured may reject such coverage or purchase additional uninsured or UIM motorist coverage. Under § 3636.C, "the term 'uninsured motor vehicle' shall

also include an insured motor vehicle, the liability limits of which are less that the amount of the claim of the person or persons making such claim . . . ." Texas law also requires that all insurance policies issued and delivered in Texas provide uninsured or underinsured motorist coverage unless this coverage is expressly waived by the insured. TEX. IN S. CODE ANN. § 1952.101. The Texas uninsured and underinsured motorist statutes do not require an insurer to include the insured motor vehicle within the definition of "uninsured motor vehicle" and Texas appellate courts have repeatedly upheld the validity of the exclusion of the insured vehicle from UIM coverage under an automobile insurance policy. Hunter v. State Farm County Mut. Ins. Co. of Texas, 2008 WL 5265189 (Tex. Civ. App. Dec. 18, 2008); State Farm Mut. Ins. Co. v. Conn, 842 S.W.2d 350 (Tex. Civ. App. 1992); Scarborough v. Employers Cas. Co., 820 S.W.2d 32 (Tex. Civ. App. 1991).

Plaintiff makes two arguments that should be considered before the Court reaches the choice of law issue. First, plaintiff argues that the exclusion in the policy is facially inapplicable because Gibson was not a "family member" as defined in the policy. "Family member" is defined as a "person who is a resident of your household and related to you by blood, marriage or adoption." Dkt. # 20-9, at 9. Plaintiff asserts that the exclusion does not apply because Gibson did not reside with Elisabeth Callaway and he could not be a "family member" as that term is defined in the policy. However, plaintiff blatantly ignores the plain language of the policy which states that "uninsured motor vehicle does not include any vehicle or equipment . . . [o]wned by or furnished or available for the regular use of you or any family member . . . ." Id. at 17. The policy defines "you" as the "named insured," and the named insured is Elisabeth Callaway. Id. at 9. It is irrelevant whether Gibson qualifies as a "family member" under the policy because State Farm did not deny coverage due to Gibson's status as a "family member." Instead, State Farm denied the Estate's claim for

6

underinsured motorist benefits because the vehicle involved in the accident was owned by "you," the named insured. Dkt. # 19-6. Second, plaintiff repeatedly states that Elisabeth Callaway "transferred ownership" of the Expedition to Gibson but that Gibson had not obtained title to the vehicle at the time of the accident. If plaintiff were correct that Gibson actually owned the Expedition, this would be a very simple case in which it was apparent that the Estate could not recover underinsured motorist benefits under Texas or Oklahoma law. The insurance policy was issued to Elisabeth Callaway, not Gibson, and automobile insurance coverage ceases upon transfer of ownership unless the insurer expressly agrees to provide coverage to the new owner. Braun v. Annesley, 936 F.2d 1105, 1108-09 (10th Cir. 1991) (finding that as a matter of Oklahoma law a person's insurable interest in a vehicle terminates upon transfer of ownership and any existing insurance coverage terminates upon transfer of ownership). If ownership had actually transferred to Gibson, Elisabeth Callaway would no longer have had an insurable interest in the vehicle, and the policy would no longer have been in force. State Farm does not dispute that Callaway owned the vehicle when the accident occurred and for the purpose of ruling on the motions for summary judgment the Court will treat Callaway or her estate as the owner of the Expedition.

Plaintiff relies on Bohannon v. Allstate Insurance Company, 820 P.2d 787 (Okla. 1991), and argues that Oklahoma courts would not apply the law of the place where the contract was made because enforcement of the policy would be contrary to an Oklahoma public policy. In Bohannon, a vehicle driven by James Grigsby, III, an Oklahoma resident, collided with a vehicle driven by Ola McIntosh, also an Oklahoma resident. Id. at 789. A passenger in McIntosh's vehicle, Ruby Bohannon, was injured in the accident, and Bohannon was a resident of California. Bohannon's injuries were substantial and her damages exceeded the amount of Grigsby's liability insurance, and

she sought underinsured motorist benefits from her insurer. Id. Bohannon's insurer, Allstate Insurance Company, issued the policy to Bohannon in California, and Allstate denied the claim for underinsured motorist benefits. Id. Bohannon filed a lawsuit against Grigsby and McIntosh, and she was later permitted to add Allstate as a party after the denial of her claim for underinsured motorist benefits. Bohannon accepted the policy limits of $25,000 liability coverage from Grigsby and $10,000 of underinsured motorist benefits from McIntosh, but she still sought underinsured motorist benefits from her own insurer. Bohannon and Allstate disputed whether Oklahoma or California law applied to Bohannon's claim for underinsured motorist benefits. Under the California insurance contract and California insurance law, Allstate could reduce the amount of Bohannon's underinsured motorist benefits by the liability and underinsured motorist benefits received from Grigsby and McIntosh, but under Oklahoma law Allstate would have no right to a credit or setoff for payments from Grigsby's and McIntosh's insurers. In response to a certified question from a federal district court, the Oklahoma Supreme Court provided the following choice of law rule for motor vehicle insurance disputes:

> The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

Id. at 797. Applying this test, the Oklahoma Supreme Court found that it would violate the public policy of Oklahoma to allow a setoff for the amount of underinsured motorist benefits received from McIntosh, but Bohannon had not identified any Oklahoma public policy that would prevent Allstate from claiming a credit or setoff for liability payments received by its insured.

However, Bohannan was decided in 1991 and the Oklahoma Supreme Court has subsequently revisited the choice of law issue. In Bernal v. Charter County Mutual Insurance Company, 209 P.3d 309 (2009), an Oklahoma resident, Billy Bernal, was a passenger in a vehicle driven by Brandon Wiggins, a Texas resident with a Texas automobile insurance policy, and Bernal was killed in an automobile accident in Oklahoma. Id. at 310. Wiggins' insurer, Charter County Mutual Insurance Company (Charter), paid the liability policy limits to Bernal's estate, but it refused to pay underinsured motorist benefits based on an exclusion in the policy.[1] Id. The Oklahoma Supreme Court acknowledged the Bohannan choice of law rule but stated that this was an area of the law that "continues to evolve." Id. at 315. Under the facts of the case, it was unnecessary to apply the Bohannan rule because the court was "**simply unable to decide the Texas insurer's liability by applying Oklahoma law because we are met with an explicit legislative exclusion**." Id. at 316 (emphasis in original). Section 3636 states that:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

OKLA. STAT. tit. 36, § 3636.A. The requirements of the Oklahoma underinsured motorist statute apply only when an insurance policy is "issued, delivered, renewed, or extended" in Oklahoma and the vehicle is "registered or principally garaged" in Oklahoma. Bernal, 209 P.3d at 316. The parties did not dispute that the policy was issued in Texas and that the vehicle was registered and principally garaged in Texas. Id. The dispute did not "implicate any insurance benefits under an

---

[1] The dispute in Bernal concerned the same exclusionary language that is at issue in this case. See id. at 310 n.2.

9

existing Oklahoma policy" and no Oklahoma public policy would be impacted by enforcement of the exclusionary language in the insurance policy. The Oklahoma Supreme Court found that Texas law governed the estate's claim for underinsured motorist benefits. Id. at 317-18.

Plaintiff argues that Bernal is distinguishable because the Expedition was principally garaged in Oklahoma and the insurance policy was "extended" in Oklahoma. Dkt. # 24. The parties spent a significant portion of their briefing arguing where the Expedition was garaged, but both parties overlooked the plain language in the policy stating that the Expedition "is principally garaged at the address shown unless otherwise stated." Dkt. # 20-9, at 3. The address listed on the declarations page is a Texas address and neither Elisabeth Callaway nor Gibson ever notified State Farm that Gibson had taken the Expedition to Oklahoma. The policy specifically states that any change that would require an adjustment to the premium, including a change to the "place of principal garaging of insured autos," must be reported to State Farm. Id. at 23. Plaintiff has cited no authority to support her argument that an insured may unilaterally change the location where a vehicle is principally garaged by loaning an insured automobile to a third party. Based on the plain language of the policy, the Court finds that the Expedition was principally garaged in Texas at the time of the accident. Plaintiff also argues that the policy was "extended" in Oklahoma because the policy territory includes the "United States of America, its territories or possessions . . . ." However, the statutory language at issue states that "[n]o policy . . . shall be issued, delivered, renewed, or extended" in Oklahoma unless uninsured and underinsured motorist coverage is offered to an insured. OKLA. STAT. tit. 36, § 3636.A. The purpose of the statute is to ensure that new automobile insurance policies issued in Oklahoma or insurance polices that are renewed or extended in Oklahoma provide uninsured and underinsured motorist coverage. State Farm Mut. Automobile Ins.

10

Co. v. Wendt, 708 P.2d 581, 583 (Okla. 1985). The word "extended" as used in § 3636 is used in reference to the policy itself, rather than the scope of coverage under the policy, and there is no language in § 3636 suggesting that every automobile insurance policy must meet the requirements of Oklahoma law merely because its coverage territory includes Oklahoma. The evidence establishes that the policy was issued in Texas and it was subsequently renewed or extended in Texas, and plaintiff has failed to show that § 3636 is applicable to this case.

The Court has reviewed the summary judgment record and finds that Bernal is directly on point. In this case, the vehicle involved in the automobile accident was covered by an insurance policy issued in Texas and the policy was renewed or extended only in Texas. The Expedition was registered in Texas and, under the plain language of the policy, the Expedition was principally garaged in Texas. The Court does not need to apply the Bohannan choice of law rule, because this case falls within the "explicit legislative exclusion" identified by the Oklahoma Supreme Court in Bernal. Bernal, 209 P.3d at 316. Just as in Bernal, the parties are disputing language in the policy excluding the insured's vehicle from the definition of the term "uninsured motor vehicle." Id. at 310 n.2. This case does not impact any person's right to benefits under an insurance policy issued in Oklahoma and, as noted in Bernal, "**[n]either UM benefits contracted and paid for pursuant to Oklahoma law are implicated here nor were any benefits due under [Oklahoma] law either denied or diminished**." Id. at 317 (emphasis in original). Section 3636 does not apply to plaintiff's claim for UIM benefits and she is not entitled to a declaratory judgment that "Oklahoma law governs this loss" or that "the Estate is entitled to [UIM] benefits" under the policy, and defendant's motion for summary judgment should be granted. See Dkt. # 2-1, at 4.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 19) is **denied**, and Defendant's Motion for Summary Judgment (Dkt. # 20) is **granted**. A separate judgment is entered herewith.

**DATED** this 24th day of July, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE